# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES MURPHY and ESTATE OF PATRICIA PEARSON<br>                    Plaintiffs,<br><br>                vs.<br><br>BANK OF AMERICA, NA.,<br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION, A/K/A,FREDDIE MAC,<br>ISSUER OF FREDDIE MAC<br>MULTICLASS CERTIFICATES, SERIES<br>4110, CALIBER   HOME LOANS, INC,<br>NATIONSTAR MORTGAGE LLC, US<br>BANK, TRUST N.A. AS TRUSTEE FOR<br>LSF9 MASTER PARTICIPATION<br>TRUST, LSF9 MASTER<br>PARTICIPATION   TRUST,<br>NATIONWIDE TITLE CLEARING, INC.<br>MARGUERITA WITZIGMAN, RALPH<br>FLORES, RYAN LAMB, JAMES E.<br>ALBERTELLI, T/A ALBERTELLI LAW<br><br><br>Defendants | Civil Action<br>Case # |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## PARTIES

1. Plaintiff James Murphy, ("Plaintiff") is, and all relevant times mentioned herein was an individual, residing in the State of Florida, County of Palm Beach.

2. Said Plaintiff acquired an interest in the real estate residential property described as 472 Dover Street, Boca Ratan Florida from his mother, Patricia Pearson by Deed dated October 18, 2004, and recorded in the Office of the Recorder of Deeds on Book 17648, Page 00036 subject to the existing lien on the property. The said Patricia Pearson has since died and is now represented by her estate.

3. Defendant, Bank of America, N.A is a national bank, federally chartered with offices in the State of New York and throughout the United States of America.

4. Defendant, Federal Home Loan Mortgage Corporation is a corporation located in Washington, D.C. and Virginia and acquires and holds mortgages throughout the United States of America.

5. Defendant, Caliber Home Loans, Inc. is a corporation purportedly servicing mortgage loans throughout the United States of America.

6. Defendant, Nationstar Mortgage LLC is a limited liability company with offices throughout the United States of America.

7. Defendant, US Bank Trust, N.A. is a national bank, federally chartered with offices in the State of California and throughout the United States of America.

8. Defendant, Nationwide Title Clearing, Inc. is a title agency and does business throughout the United States of America.

9. Defendants, Marguerita Witzigman, Ralph Flores, Ryan Lamb and James E. Albertelli, t/a Albertelli Law are individuals who participated in predatory schemes as set forth in this Complaint.

10. Defendant, Faye Servicing is a purported services of mortgages loans throughout the United States of America.

11. Defendants, Bank of America, NA, Nationstar Mortgage LLC, US Bank Trust N.A. as Trustee for LSF9 Master Participation Trust shall collectively be referred to herein as "Predatory Lenders".

12. Defendants, Caliber Home Loans, Inc. and Faye Servicing shall hereinafter be referred to as "Predatory Servicers."

13. Defendants, LSF9 Master Participation Trust, Nationwide Title Clearing, Inc., Marguerita Witzigman, Ralph Flores, Ryan Lamb and James E. Albertelli t/a Albertelli Law shall collectively be referred to herein as "Predatory Participants."

## JURISDICTION AND VENUE

14. Plaintiffs brings this action for damages and other injunctive relief under: (1) Sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536; (2) Sections 807(2)(a), 807(10), and 808 of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(2)(a), 1692e(10), and 1692f (the "FDCPA"); (3) Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("Regulation X"); (4) Section 105(a) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1604(a), and the regulations promulgated thereunder at Regulation Z, 12 C.F.R. part 1026 ("Regulation Z"); and (5) Section 3(b) of the Homeowners Protection Act of 1998, 12 U.S.C. § 4902(b) (the "HPA").

15. The Court has subject-matter jurisdiction over this action because it is brought under Federal Consumer Financial Law, 12 U.S.C. § 5565(a)(1) presents a federal question as well as other Federal Statutes referred to herein.

16. Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because Defendants are located in or do business in this district and part of the events giving rise to the claims took place in this district.

17. The Defendants acted individually and collectively  to perpetrate a series of illegal schemes that acted to the detriment of any real parties in interest by aggressively concealing and withholding essential, material, and vital information covering the true nature of transactions that were masked and labeled as conventional investments or residential mortgage loans.

18. The schemes fall into three separate coordinated activities designed to pursue illegal and illicit profits at the cost to and detriment of the Plaintiffs.

19. The first scheme was the "origination" (i.e., sale) of a nonexistent loan by disinterested parties having no financial interest in the process of lending money other than making a profit on the sale of securities and with no risk of loss on any putative "loan."

20. The second scheme was the false and self-serving statements and notices claiming rights to servicing, processing, and collecting payments from Plaintiffs.

21. The third scheme was the false claim of standing and authority to foreclose the subject property, reap the proceeds and distribute the proceeds as revenue and not as restitution to anyone who had paid value for the purported debt.

## FACTUAL BACKGROUND

22. Plaintiff's mother, Patricia Pearson, now deceased, originally made a real estate loan (the "Subject Loan") from Bank of America, N.A. in the principal amount of $115,200.00, as Loan #3295596495 at which time the Borrower allegedly executed a Mortgage from premises at 472 Dover Street, Boca Raton, State of Florida 33487 and Note. A full description of the Subject Property is attached hereto, and marked Exhibit A."   The Mortgage was recorded on November 13, 2002 as Instrument #BK 14385 PG 1351 in the official records of Palm Beach County, Florida.   Notes were historically not recorded.   It is presumed that an original Note was signed by the Borrower at the time the loan was consummated, however, to date, the original Note has never been produced in any of the multiple legal actions hereinafter set forth, nor has it ever been produced in response to demanded pretrial discovery or in trial evidence.

23. On or about April 16, 2008, a purported Assignment of Mortgage was made by Bank of America, NA, by Rhonda Weston, as alleged Vice President of Bank of America, N.A, without disclosure of true employment to the Federal Home Loan Mortgage Corporation, with an address of Federal Home Loan Mortgage Corporation, c/o Bank of America, and recorded on September 10, 2008 as Instrument # BK 22851 PG 0222 in the Official Records of Palm Beach County, Florida.

24. The said Assignment references in the printed language a Note accompanying the Mortgage as too being assigned.   A true copy of said Assignment of Mortgage is attached hereto and marked Exhibit "B." It is clear, as a matter of public record, and as intended evidence in this matter, that subsequent purported Assignment of Mortgages, reviewed infra, do not emanate and are not in the chain of title from the Federal Home Loan Bank Board, a/k/a Freddie Mac as being the stated holder of the Mortgage Lien to the Subject Premises. (herein "Mortgage Assignment 1")

25. On or about December 23, 2012, a purported Assignment of Mortgage was made by Bank of America, N.A. on the Subject Property to Nationstar Mortgage LLC and recorded as Instrument #20120509081. In Bk 25670, Pg 1049 in the Official Records of Palm Beach County, Florida. ("Mortgage Assignment #2") The purported Assignment of Mortgage was signed by Ralph Flores, alleged Assistant Vice president of Bank of America, N.A. without proof of his employment with Bank of America, N.A.

26. The Defendant, Bank of America, N.A., knew or should have known of its own previous Assignment of the Mortgage Premises to the Federal Home Loan Mortgage Corporation Bank Board as previously averred herein. This Assignment of Mortgage (herein "Mortgage Assignment 2") also purported to include an assignment of the Note (or Notes) which would have been an impossibility as the said Note was assigned previously to the Federal Home Loan Bank Board on or about April 16, 2008. It is to be noted that said Assignment of Mortgage (Mortgage Assignment #2) lacks any statement of consideration paid other than "For value received." Further it is signed by an Assistant Vice President which brings into question whether the assignment was authorized by the formal officers of the corporation.

27. Incredibly, thereafter on or about December 23, 2013, the Federal Home Loan Mortgage Bank Board purports to make an Assignment of Mortgage to Nationstar Mortgage LLC, notarized on August 18, 2016 and recorded on February 24, 2014 with the Office of the Clerk, Palm Beach County in Book 26629, Page 1300. (Mortgage Assignment #3). This assignment notably does not include an assignment of the Note which is not surprising since the Federal Home Loan Mortgage stated on their original foreclosure filing that they do not possess the Note but filed anyway.

28. In a preceding trial in 2019 the Plaintiff herein was the Defendant in a foreclosure matter. The self-declared servicer, Caliber Home Loans provided a court document "Notice Of Sale Of Ownership Of Mortgage Loan" dated May 12, 2016, stating that the LSF9 Trust purchased the Murphy loan but no seller or amount of purchase, or consideration was mentioned and according to a Certified document from September 21, 2018, from the Security and Exchange Commission, this transpired when LSF9 was inactive for 2016. Caliber also stated Nationstar was now the servicer on this same document without any apparent assignment. Once again there is no credibility with respect to the fabricated document as Caliber assigned their alleged rights to Fay servicing in 2020. Additionally, Caliber Home Loans representing US Bank Trust N.A. as Trustee for LSF9 Trust had their witness, Mr.Serge Alexis state under oath that the lawsuit was financed by Caliber Home Loans which paid him as a witness and paid Albertelli Law for their legal services (transcript of trial, page 81 section 2-6.) Additionally, their witness stated (at transcript page 76 sections 20-25 and page 77 sections 1-30) that Caliber Home Loans had acquired all documentation from Bank of America and all other servicers. This shows Caliber Home Loans

knew in advance that Bank of America had already assigned their rights to Freddie Mac prior to the lawsuit, that Freddie Mac assigned only the Mortgage to Nationstar, that Nationstar knew they only received the mortgage from Freddie Mac and that Nationstar erroneously filed a lost note affidavit never acquiring the Note, and all parties knew all this in advance but left this chain of title out of the original motions with premeditation to deceive the court.   Also note that Albertelli Law, an exclusive foreclosure firm was under investigation by the Inspector General of the United States before the lawsuit initiated and upon information and belief is currently still under investigation.

29. Putting aside for the moment that any basic report of title would identify the sundry assignments and the chain of title thereof; it is asserted there could be no legitimate reason for the Federal Home Loan Bank Board to assign a mortgage without an assignment of the accompanying note. Further, the Federal Home Loan Bank Board upon information and belief would have contributed the original Note to its original securitization of the loan as referenced infra, and presumably only a Trustee of the securitized trust could make such assignment.

30. Thereafter, on October 11, 2016, Nationstar Mortgage LLC purports to make another Assignment of Note to US Bank, Trust N.A. as Trustee for the LSF9 Master Participation Trust which Assignment was recorded on October 11, 2016 in the Office of the Clerk, Palm Beach County, Florida in Book 28621, Page 130. (Mortgage Assignment #4) Said Assignment was yet again made without an assignment of the Note even though the earlier Assignment of Mortgage to Nationstar Mortgage LLC (Mortgage Assignment #2) did include an assignment of the Note (and even though the said Assignment should have no force and effect, as previously being assigned to the Federal Home Loan Bank Board (Mortgage Assignment #1).

31. With four separate Assignment of Mortgages to the same property it is near impossible to understand their purpose when in so oblivious derogation to the recording and indexing of such documents and the sanctity of a clean chain of title to determine true ownership or mortgaging of property. Additionally, Caliber Home Loans has now assigned their alleged servicing rights to yet another servicer, Fay Servicing who is now representing the same US Bank Trust NA as Trustee for LSF9 Trust after losing the litigation for standing, Fay Servicing is now claiming the Plaintiff's loan is in default and is demanding payment. Ironically, according to the court Document "Notice Of Sale Of Ownership Of Mortgage Loan" submitted by Caliber Home Loans dated May 12, 2016, Caliber was no longer the servicer, Nationstar was - so how could they assign their servicing rights to Fay in 2020?

32. Nationstar knowing only the mortgage was assigned from Federal Home Loan Mortgage filed a "Lost Note Affidavit" and "Reconstruction of Note" judicially derived concepts, so as to allow any party holding an Assignment of Mortgage to bring a foreclosure action in the courts. Additionally, Federal Home Loan Mortgage

stated in their original foreclosure filing that they do not possess the original Note but filed anyway in violation of Florida Statute 660.35.

33. In the case sub judice, there could conceivably be five (5) parties who could have commenced a foreclosure action against Plaintiff, to wit, Bank of America, the Federal Home Loan Bank Board, the Securitized Pooled Fund/Trustee of mortgages to which the original mortgage and note was pledged, Nationstar Mortgage, LLC and US Bank Trust N.A, as Trustee for LSF9 Trust of yet another unrelated securitized pool fund/trustee of mortgages.

34. In point of fact, two (2) separate mortgage foreclosure actions were instituted against the Plaintiff, as a Defendant including the Federal Home Loan Bank Board Case No. 2007CA018847 adjudicated on November 25, 2013, with plaintiff herein being awarded a voluntary dismissal against Federal Home Loan Mortgage. The second case was US Bank Trust N.A., as Trustee for LSF9 Trust Case No. 50-2017-CA012236XXXXMB (AA) resolved on October 7, 2019, with a dismissal.

35. In both instances, the foreclosure complaints were dismissed for procedural failures for lack of producing any Note, amongst other reasons. No doubt, each of said actions would appear to be doomed for failure, as the only possible legitimate holder of the Original Note would be the Trustee of the original securitized Trust, otherwise it was truly  lost in the shuffle of seemingly bogus Assignments and/or failed securitizations as further reviewed herein.

36. By way of review of this myriad of assignments, below is a summary of what happened:

**Assignment of Mortgage #1**

Bank of America to Federal Home Loan Bank Board

Mortgage and Note assigned


**Assignment of Mortgage #2**

Bank of America to Nationstar Mortgage LLC

Mortgage and Note Assigned


**Assignment of Mortgage #3**

Federal Home Loan Bank Board to Nationstar Mortgage LLC

Mortgage Only Assigned, No Note

**Assignment of Mortgage #4**

Nationstar Mortgage to US Bank Trust N.A. as Trust

Mortgage Only Assigned, No Note

37. Bank of America in Assignment #2 assigns the Mortgage and Note to Nationstar Mortgage LLC, to which it already previously assigned to the Federal Home Loan Bank Board.  Therefore, Assignment #2 must be considered a nullity, as Bank of America cannot assign that to which it already assigned to another.  When Nationstar Mortgage LLC assigns the Mortgage only to US Bank, Trust N.A, as Trustee, it only assigns the Mortgage, which also made the assignment incomplete without the accompanying Note.

38. In Assignment of Mortgage #3, the Federal Home Loan Bank purports to make an Assignment of a Mortgage, without a Note, yet the original Assignment of Mortgage #1 was presumably given to the Federal Home Loan Bank with a mortgage and note to be incorporated into a securitized pooled investment fund. Hereto, the Federal Home Loan Bank Board ought not to give an Assignment of Mortgage and Note, previously pledged to a securitized investment fund.

39. In Assignment of Mortgage #4, Nationstar Mortgage LLC assigns a Mortgage, without the Note to US Bank Trust N.A., as Trustee which means that US Bank, Trust N.A. never takes possession of the Note, yet as averred herein, commences a foreclosure action against the Plaintiff, nevertheless and after filing a lost note affidavit knowing they never received it.

40. Further, in Assignment of Mortgage #4, Nationstar Mortgage LLC assigns a Mortgage without the Note, although presumably, it took assignment of the Note in Mortgage Assignment #2.  However, thereto, Assignment #2 to Nationstar Mortgage LLC followed a previous assignment to the Federal Home Loan Bank Board in Mortgage Assignment #1, which Mortgage and Note was presumably given as security pledged and incorporated in the securitized pooled investment, which then presumably came under the control of the security's Trustee. Thus, every single purported Assignment of Mortgage following Assignment of Mortgage #1 was tainted and rift with potential for fraud.

41. There further remain a serious question, as to what, if any of the foregoing documents were validly signed by the stated corporate assignor, whether the person signing the document had authority to sign the document, and whether the person signing the document had authority under the corporation's charter or similar to execute documents on behalf of the corporation.   Assignment of Mortgage #1 is signed by a Vice President and Attested by an Assistant Secretary with two witnesses and on its face appears to be valid. Assignment of Mortgage #4 is signed by Marguarita Witzigman, an employee for Nationwide Title Clearing, as Vice President

of Loan Documentation for Nationstar in violation of their Assurance of Voluntary Compliance agreement with the Florida Attorney General signed on November 24, 2015, before the Murphy case on October 7, 2019, specifically violating Section 2.2 and 2.7. for deceptive practices.

42. Ms. Witzigman is a known robo-signer of false and fraudulent documents, a purported Vice President of Loan Documentation which is not a statutory office of a valid Bank corporation. Further, said Assignment was to be returned to Caliber Home Loans, Inc. whose relationship is in itself highly questionable for reasons stated infra. Assignment of Mortgage #2 is signed by an Assistant Vice President, without witness signatures. Hereto remains the question whether an Assistant Vice President had authority to sign the Assignment and whether Assistant Vice Presidents had the corporate authority to do so.

43. In the ordinary presentation of a foreclosure case in the state courts, the production of the original Note and Mortgage in the possession of the foreclosing Plaintiff appears to pass the due process test, along with proof of non-payment and demand therefore, to obtain foreclosure judgement. The state courts, more often than not, have looked aside at any deficit in the history of the chain of title or custodianship of the document preceding the Plaintiff's claimed ownership and possession of the Mortgage and Note. However, said practices in relaxing the chain of ownership have unfortunately led the lenders to a course of conduct of "conveniently" producing documents whose authenticity is unclear, or whose authenticity is negated through a fraudulently prepared document signed by a robo signer. Combined with the allowance to accept an Affidavit of Lost Note, or to reconstruct a Note, the Courts have unwittingly opened a pandora's box to allowed fraudulent foreclosure proceedings.

44. In regard to the instant Plaintiff, he has been sued two (2) times, by two (2) unrelated lenders, and in both instances no original Notes were ever produced yet the Lenders proceeded through suit cavalierly and with indifference that they could produce no original Note at the time of trial and yet claimed they had the unfettered standing to do so. Defendant, James E. Albertelli, t/a Albertelli Law initiated and litigated one or more law suits against the Plaintiff, and upon information and belief, knew all the while that there was no Original Note)s) that could be produced, yet perpetuated the Court's belief that said Notes duly existed.

45. Hidden also from the purview of the Plaintiff, is whether the suing lenders are the actual lenders, the servicers for the lenders, the assignee of the lender's litigation rights, the Trustee under the securitized investment or in some other capacity. Further, discovery into the validity of the underlying security is all too often deemed to be outside of the bounds of discovery, the thought of the courts being, just show me the mortgage and original note assigned to the named Plaintiff which somehow and most conveniently always has a five and dime store type stamped assignment.

46. The only Assignment to which a presumption of validity might be Assignment of Mortgage #1, to which purportedly was assigned as security for a securitized investment of pooled mortgages. However, the alleged securitization in this instance, has its own imperfections which likewise should taint any foreclosure originating within or assigned from the security issue including Federal Home Loan Mortgages' original pleadings dated October 24, 2007, stating clearly, they did not have the Note but filed anyway.

47. Upon information and belief, the funds for this loan did not come from the entity that originated the loan, to wit, Bank of America. The funds rather came from investors in a securitized trust. None of the parties who attempted to collect the subject loan ever had any right to collect it.

48. Lenders used to do business by providing the funds for a loan from their own account. They would provide the money, keep the documents evidencing the loan, and keep it on their books, and collect it. Often, they had a personal relationship with the borrower. Those days are long gone.

49. In order for a party to collect the subject loan, the law requires that the party be assigned the rights to the debt with no conditions, in writing, and the debtor must be notified of such assignment.

50. In this case, neither Plaintiff nor his mother were never properly notified the subject debt was assigned and any such notice was fraudulent since the assignment was fraudulent.

51. The role of the named trustee Bank is to allow use of its name to create the illusion of institutional transactions.

52. In the case at bar, the foreclosure process is being used for profit, not restitution.

53. This has been done in this case on the computer records of an entity upon information and belief to be CoreLogic supplying data (through an IT platform called VendorScape) to a company claiming to be a servicer.

54. The actual data is entered through automated systems managed exclusively upon information and belief by Black Knight, or its equivalent, for whom CoreLogic provides servers and software.

55. Except for foreclosure process, neither the virtual nor any actual loan account is used or reported by anyone for any purpose or any creditor. However, data from reports generated from the virtual loan account is used for external "reports" by Black Knight, CoreLogic and investment banks.

56. The obligation of the homeowner in this case has already been extinguished, and all participating parties have been paid in full or are otherwise current.

57. Nobody has suffered any financial loss arising from the cessation of payments by Murphy.

58. These predatory actions are pursued because in most cases the creation of false documentation has been taken at face value as long as the documents appear to be facially valid.

59. By concealing the true nature of the transactions with Murphy, the parties seek to create additional profits that were already sufficient to pay off and did extinguish any loan account owned by any creditor.

60. The servicers named in this action are actually a strawman for other parties who are performing certain financial and accounting services for investment banks.

61. They conduct no "servicing" activities, and its records reflect entries made on other records maintained by other companies over which the servicers have no legal control.

62. The servicers' records are a made-for-court presentation of a payment history reflecting transactions that either never occurred or which the servicer never handled --- regarding a loan account that was retired contemporaneously with the origination of the subject Murphy transactions.

63. To put it simply, there is no legal person, business entity or name that maintains any bookkeeping or accounting ledger on which there are entries establishing ownership of the underlying obligation, to wit: there are no entries even asserting payment of value for the underlying obligation, debt, note or mortgage.

64. For all purposes other than foreclosure, the participating parties coordinating their activities to pursue foreclosure make no claim to ownership of the debt, note or mortgage; but they do assert the right to represent the interests of a designated nominee or virtual creditor who is implied to own the debt.

65. However, they seek to have this Court apply legal presumptions that would result (and did in fact result) in a presumption of ownership and a presumption of status of the debt account that is contrary to the facts.

66. This was accomplished by avoiding ownership and thus avoiding the status of creditor or lender throughout the entire cycle.

67. In plain language, through no fault of its own, this Court is in the process of arriving at a conclusion that is inapposite to the facts. This is frankly because the Courts do not actually understand the attributes and elements of securitization.

68. None of the Predatory Lenders have never acquired and do not now own - legally or equitably - or control any attribute of the Murphy debt, note or mortgage.

69. None of the Predatory Lenders or so-called Predatory Servicers maintain any financial records relating to the ownership of the Murphy debt, note or mortgage nor any loss incurred as a result of Murphy's cessation of payments.

70. Apparent, implied or presumed transfers of rights to the mortgage or note are all legal nullities, to wit: they did not involve transactions in which (a) anyone paid value or (b) such transactions were with a grant of rights to act, administer, collect or enforce the debt granted by a party who had paid value for the underlying obligation as required by Article 9 §203 of the Uniform Commercial Code, as adopted by state law in Florida.

71. The Predatory Lenders do not maintain any entry on their books of account reflecting the establishment of the loan account as an asset receivable, in accordance with all known bookkeeping and accounting principles and in accordance with custom and practice in the industry.

72. The erroneous assumption that any part of the Murphy Loan was ever sold is based on misrepresentation of the loan contract and concealment of the larger securitization contract.

73. The original loan agreement was incomplete in that the parties never had mutual intent to complete a loan agreement. Murphy and his mother most certainly intended a loan agreement. But if a loan agreement means the establishment of a loan account on the books and records of a known creditor acting as lender and subject to laws and regulations governing the behaviors of lenders, then Murphy did not get a loan agreement despite some appearances to the contrary.

74. The term "Legal Title Trustee" is a term of art in the financial industry. It means that a party (Predatory Lenders) is trustee in name only for whatever title has been conveyed to it by virtue of a written instrument, regardless of whether or not the document of transfer conveyed anything other than bare naked title to the document. It is not a memorialization of a position in which the Legal Title Trustee obtains or can claim any financial right, title or interest to any purported debt, note or mortgage proceeds. It also does not convey and right, title or interest to any money payments or other payments of value from anyone to anyone.

75. In short, it is a blank placeholder in name only that serves as a business name under which the "bookrunner" investment bank does business. In conclusion, no loan (and certainly not the subject homeowner transaction) has ever been sold or entrusted to the Predatory Lenders nor has any financial or legal ownership, right, title or interest of any purported debt, note or mortgage. Such documents of transfer are a ruse designed to create the illusion that a purported debt exists, that is owned by the Predatory Lenders and that such Defendants can and do have the right, power and obligation to manage the active business affairs of the trust including subject transactions labeled by the "bookrunner" investment bank as "mortgage loans."

76. The express intent was to create documents and not to convey to the Legal title Trustee or otherwise make it a party to any financial transaction in which value was paid for any alleged obligation of Plaintiffs or any homeowner. The documents were all a memorialization of nonexistent transactions.

77. LSF9 TRUST does not factually or legally exist. No documents have ever been recorded or published or filed in that name. The Predatory Lenders created and utilized the illusion of a Trust entity and then created the illusion of a purchase of the subject putative loan by the nonexistent trust entity, and then created the illusion of a valid foreclosure action and pursued it even though they knew that the action lacked any merit.

78. All claims made or adopted or implied by the Defendants, individually, jointly and severally as to the existence of a loan account receivable on any ledger of any company, ownership of such account and authority over such account were at all times material hereto false, known to be false and were intended to be used to conceal the scheme of weaponizing foreclosure process strictly for profit and not for restitution or repayment of any purported debt owed by Plaintiffs. All such claims were made with full knowledge and/or reckless disregard of the damages and negative consequences to Plaintiffs herein.

79. The Defendants formed a conspiracy or joint venture in which they regularly misrepresented the status of the subject transaction described herein, and their own claims to own or administer, collect payments and/or enforce some of the terms and provisions of that transaction after procuring Plaintiffs' signature by misrepresentation, fraud in the inducement and fraud in the execution.

80. Each of the Defendants willingly and intentionally played a role in fabricating and even recording false documentation that they knew or must have known was false.

81. As more particularly and specifically described below, Plaintiffs' causes of action arise from:

    (A) violations of statutory and common law,

    (B) reformation, quantum meruit, quasi contract and breach of implied contract,

    (C) common law

        (i) fraud,

        (ii) rescission and

        (iii) reformation,

    (D) civil theft of money and property,

    (E) malicious abuse of process,

    (F) slander of title,

    (G) violations of statutory duties and statutory damages,

    (H) common law compensatory damages and

    (I) treble damages for violations of the Federal and State of Florida Racketeer Influenced and Corrupt Organizations (RICO) Act arising from the employment an illegal, unauthorized scheme in concert with others acting individually and as part of a civil conspiracy to cause injury to and upon Plaintiffs and the courts.

82. All of the information regarding "securitization" in this Complaint was

    (a) unknown and unknowable to Plaintiffs at the time of the origination of the subject "loan" and

(b) unknown and unknowable to Plaintiffs at the time that foreclosure proceedings were started

(c) unknown and unknowable at the time the foreclosure proceedings were concluded, and

(d) unknown and unknowable prior to the receipt of information obtained by Plaintiffs very recently in the past few months preceding the filing of this Complaint.

83. The ignorance of the Plaintiffs was caused solely by the successful and continuing active concealment of an illegal scheme and intentional and/or negligent misrepresentations of facts that were untrue and were known, must have been known or shown have been known by the Defendants as being untrue.

84. Access to any information that might have alerted the Plaintiffs to the true nature of the transactions and proceedings in the history of this claim was deliberately and intentionally concealed and withheld by the Defendants, individually, jointly and severally in order to further their illicit purposes and plans.

85. Without disclosure of the existence of a concealed business scheme that was based on a business plan of generating profits solely from (a) creation, issuance, sale and trading of unregulated securities and (b) illegal administration, collection and enforcement of account stated obligations allegedly due from Plaintiffs to some or any of the Defendants, no reasonable person could know such a scheme was operating and no reasonable person had any access to information that could have alerted them of the existence of a claim nor a defense to the illegal and wrongful scheme of administration, collection and enforcement.

86. In fact, each of the Defendants reinforced the big lie, to wit: that the transaction with Plaintiffs created an obligation or purported debt that had been securitized or at least sold to someone who paid value in exchange for receiving a valid conveyance of legal ownership of the putative underlying purported debt. Each of the Defendants knew, must have known or should have known that no financial transaction had taken place in which the transaction with Plaintiffs was securitized or sold.

Plaintiffs acknowledge the receipt of funds at the falsely represented "loan closing." But what they had received was a disguised payment for services in entering a concealed business scheme as set forth herein. Plaintiffs were entitled to receive such funds as reasonable compensation for their essential role in launching a concealed business scheme. But for the Plaintiffs there would have been no transaction and no scheme. As the recipient of such funds, Plaintiffs are entitled to keep the funds, the recipient made no misrepresentations to induce the payment, and the recipient did not have notice of a mistake. Since at the end of the transactional cycle with Plaintiffs there was no lender, no creditor and no loan account

receivable on any accounting ledger of any legal person, the Plaintiffs were owed compensation for their services and their assumptions of concealed risks and losses.

87.  Defendants lied, individually, jointly and severally, when they presented the origination as a loan, and each time they presented correspondence and notice regarding the implied existence of a nonexistent loan account, the ownership of it and authority emanating from ownership of the account.

The transaction cycle with Plaintiffs involved multiple parties and actors. It starts with the "bookrunner" investment bank borrowing funds from third parties using collateral consisting of the prospective sales of "certificates" to investors.

The borrowed funds are thence utilized to make payments to homeowners including Plaintiffs. Every document, disclosure, conversation or correspondence anchored the illusion that the transaction was intended to be (and would be) a loan of money to Plaintiffs that was by definition required to be repaid.

88.  A fake closing was scheduled in which the Plaintiffs signed various documents including a note and deed of trust.

89.  Certificates are contemporaneously sold or sold forward to investors. The entire proceeds of sales of certificates are delivered to or on behalf of the "bookrunner" investment bank.

90.  The "bookrunner" investment bank immediately records an undisclosed "trading profit" arising out of the difference between the amount invested by investors and the amount paid to homeowners, including Plaintiffs.

91.  Disclosure of the trading profit would be mandatory by federal and state law if the transaction was in fact a loan. But no such disclosure was made to Plaintiffs because the "bookrunner" investment bank had no lending intent and could not be called a lender even though the transaction with Plaintiffs was dubbed a "loan."

92.  The trading profit paid for all or most of any risk of financial loss on the transaction with Plaintiffs, regardless of whether the payment was a loan or commission to the Plaintiffs. No loan account receivable was established on any accounting ledger of any company or legal person.

93.  Lastly, the "bookrunner" investment bank arranged to have a company stand in as "servicer" and granted the "servicer" rights to administer and assist in enforcement of the scheduled payments arising from the promissory note. Such companies, including Defendant Caliber herein, posed as debt collectors but they did not handle, directly or indirectly, payments from Plaintiffs. They were simply spokespersons (in court and out of court) for the "bookrunner" investment bank including publishing "reports" delivered to them

by third parties using data that had been entered as a result of third-party "bookrunner" investment bankers who used the money in any manner they chose, including payments to creditors, bonuses and salaries to officers and employees etc.

94. At all times material hereto, the Defendants knew that they were participating in a scheme in which fabricated documents and records would be presented in court creating the illusion of facial validity and then falsely invoking the right to legal presumptions that the purported debt account existed, the ownership of the purported debt account was in the name of the named claimant and that the parties involved in foreclosure had the required the authority to do so, granted by the owner of the underlying purported debt account. All of those representations, assertions, and implied assertions were false and known to be false by all of the actors involved in the false foreclosure against the Plaintiffs and their property.

95. Plaintiffs now know that no scheduled payment was due to any of the Defendants nor to anyone whom the Defendants claim or might claim to represent as agent, attorney in fact, servicer or in any other capacity.

96. Plaintiffs, at all times material hereto, reasonably believed - as did the courts - false representations in fabricated documents that recited or memorialized nonexistent transactions.

## COUNT I DISGORGEMENT - VIOLATIONS OF FEDERAL LAW

97. This is an action for disgorgement of money illicitly received, retained and/or held by the Defendants, to wit:

    a. Money paid by Plaintiffs to the Defendants that Defendants demanded as scheduled payments on a mortgage loan, while Defendants had no ownership or authority over any loan account receivable on any accounting ledger.

    b. Money paid by third parties to hedge products a portion of which should have been allocated and paid to Plaintiffs.

98. As a direct and proximate result of the Defendants' misrepresentations and unfounded actions, Plaintiffs was barred from knowing, even to this day, the identity of the investors who were creditor(s) of the "bookrunner" that used investor money to pay off loans that funded Plaintiffs' loan and was thus barred by Defendants from making application to the real investors who might still be equitable creditors for a workout or modification under Federal and state laws and guidelines.

99. As a final consequence proximately caused by Defendants' actions both the investor/creditors and the Plaintiffs were prevented from working out terms thus decreasing the value of the collateral and increasing the losses sustained by both Plaintiffs and the investors.

100. The CFPA is a Federal consumer financial law. 12 U.S.C. § 5481(14). Under Sections 1031 and 1036 of the CFPA, it is unlawful for any covered person to commit or engage in unfair, deceptive, or abusive acts or practices. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

101. The FDCPA, RESPA, TILA, and HPA are Federal consumer financial laws. 12 U.S.C. § 5481(14). Under Section 1036 of the CFPA, it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C § 5536(a)(1)(A). Violations of the FDCPA, RESPA, TILA, and HPA are therefore violations of Section 1036 of the CFPA. 12 U.S.C § 5536(a)(1)(A).      The transactions described herein could not have complied with federal law as the transactions were a fiction of law and not true loan documents.

102. As stated above, Plaintiffs were lured into a business scheme that did not include them for any distribution of revenue or profits but did include them for distribution of substantial risks and losses, which were the source of additional profit to the Defendants because they had "bet" against the viability of the loans, including that of Plaintiffs herein, through the use of insurance and hedge products.

103. But for Plaintiffs there would have been no predatory parties and thus no opportunity to falsely offer or consummate a "loan" agreement or transaction.

104. Since Plaintiffs had no opportunity to know, nor access to information that would have informed them of the nature of the schemes, Plaintiffs were deprived of any possibility of bargaining for incentives or compensation to enter the scheme and deprived of any possibility of rejecting the scheme altogether. Without the Court declaring the existence, terms and conditions of a quasi-contract, the parties to the transaction will be unable to adjust, negotiate or enforce their legal and financial positions in accordance with free market forces that serve as the basis for the U.S. financial and legal system.

    a. This is necessary because of the complexity of the false infrastructure involving at least hundreds of investors as to each loan, thereby making common law or statutory rescission an attractive but impractical remedy at law or equity.

    b. However, alternatively, Plaintiffs pray that this court will, in its discretion, order rescission and use either 15 USC §1635 as a guide for determining the terms and procedure of rescission.

    c.   At all times material hereto, the Defendants were acting solely in their own interest and contrary to the reasonable expectations of both the Plaintiffs.

105.  Plaintiffs were forced to absorb concealed risks as to the property valuation, existence and viability of the purported loan, and legal issues created by the concealed and unlawful use of a designated creditor instead of a real creditor who maintained an active loan account receivable on an accounting ledger showing the purchase of the underlying purported obligation and the establishment of the loan account.

106.  Further, with the extinguishment of the loan account receivable caused by what Defendants refer to as "securitization" and the intentional splitting of the money invested by purchasers of certificates, as aforesaid, Defendants created the existence or illusion of a void which they filled with themselves as authorized parties to the predatory loan.

107.  Nonetheless they posed as lenders, successor, servicers and creditors collecting money from Plaintiffs, none of which was owed to them and some of which may be owed to investors if a court of equity so construes the quasi contact created by Defendants, encompassing various parties including but not limited to unnamed investors in those certificates issued under both Series names (LSF9 TRUST and BOA Series), Plaintiffs, and other homeowners.

108.  None of said receipt of money paid by Plaintiffs was ever posted as a debit to any loan account receivable.

109.  Defendants instead took in said money under false pretenses and surreptitiously distributed it as revenue (fees, commissions, bonuses etc.). Since none of the actions undertaken by the Defendants was with any right, title or interest to the existence, ownership or authority over the Plaintiffs' transaction, no part of the money they received was lawful or excusable.

WHEREFORE Plaintiffs pray that this Honorable Court enter an order:

    a.   declaring the rights and duties and obligations of all parties hereto with respect to the subject purported debt, note and mortgage and all other recorded documentation in which the subject loan agreement is referenced or recited including but not limited to disgorgement and/or rescission,

    b.   damages for violations of statute, and

    c.   that the court grant such other and further relief as the court might deem just and proper in the circumstances, including but not limited to a final judgment canceling those recorded instruments that are determined by this court to have been false utterances of material facts, a final judgment of prohibitive injunction preventing

Defendants, each or any of them, from asserting any right, title or interest to any deed, purported debt, note or mortgage

d.   and that the court further award court costs, attorney fees and expenses related to the preparation and filing and prosecution of this lawsuit as allowed by contract, by law or both, plus such other and further relief as this Court may deem just and proper.

## COUNT II  -  QUIET TITLE

110.  The Predatory Lenders and Servicers at sundry periods of time pertinent herein, have asserted that they have a security interest and/or mortgage and/or right to collect a mortgage, and this notwithstanding that after initiating formal complaints against the Plaintiffs at motions and/or trial said Defendants were unable to evidence the necessary proof that they had a perfected interest in the Plaintiffs' property.

a.   Plaintiffs herein bring this Quiet Title action to once and for all sift out the Defendants herein who purported to this Court to have a bonifde security to this property but rather were attempting to commit a fraud upon the Court by for initiating foreclosure proceedings without being in ownership of the mortgage and note.

b.   Plaintiffs seek to foreclose and have the Defendants forfeit all right, title and interest to the property and to have the Court Order that Plaintiffs have paramount title subject to no liens or encumbrances whatsoever, and forever barring any right or claim of redemption thereto.

111.  Wherefore, Plaintiffs prays for:

a.   An Order to Quiet Title in the Plaintiffs;

b.   Forever barring the Defendants from any claim of right, title or possession to the Premises and any claim or right of redemption therein.

c.   For Costs of Suit.

d.   For Counsel Fees; and

e.   For such other relief as may be proper and just.

## COUNT III  -  EQUITABLE ACCOUNTING

112. Each of the Predatory Lenders and Servicers have asserted that they have an interest in either of the property, or the mortgage, or an apparently lost note, or as the servicer, or trustee, or custodian, or agent and/or assert some claim, right, title or interest in the property or a security interest, or a securitized interest, or some equitable lien rights to the property.

113. An Equitable Accounting is needed and the appointment of a Special Master, to collect, examine and document every documents, tangible, or intangible, or in the form of electronic media in which the Defendants, and each of them, severally have had, have, or asserting they have an interest in the property.

114. The Defendants have each participated in creating, assigning and/or receiving some claim of lien, or collection account or security interest, or service interest, or a trustee or guardian or fiduciary.

115. The Defendants have each to account for all documents and financial or economic or servicing interest in their possession evidencing any past, present, or inchoate interest in the property, and so the court can determine what Defendant's if any may have a valid claim or interest or security in the property.

WHEREFORE, Plaintiffs pray for:

    a. An appointment of a Special Master to assist in undertaking an Equitable Accounting over all of the Defendants herein.

    b. An Equitable Accounting of the Defendants, as averred.

    c. The required production of all documents and/or electronic evidence of which the Defendants had or have related in any way to the Property

    d. For Costs of Suit

    e. For Attorneys Fees

    f. For such other and further relief as the court may deem adequate and just.

## COUNT IV – CIVIL CONSPIRACY

116. The Defendants have each participated in concert with one or more other Defendants to accomplish an unlawful purpose or to accomplish some purpose by unlawful means.

117. Each of the Defendants are jointly and severally liable for asserting some colorable right, title or interest in the Property or Security therefore, or the Servicing thereof.

118. Each of the Defendants in concert with other Defendants, either were the assignor or assignee of alleged instruments either physical or in electronic means that purported to have some right, title or interest in the Property, or right to account thereover when then knew or should have known that the rights received or assigned were flawed   or fraudulent.

119. The Plaintiffs have and continue to sustain irreparable harm, injury and damages as a direct result therefrom.

WHEREFORE,   Plaintiffs pray that:

     a.  A judgment determining that the Defendants, jointly and severally committed civil conspiracy.

     b.  An   Order of the Court requiring that they   cease and desist therefrom.

     c.  Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

     d.  Costs of Suit

     e.  Attorneys Fees

     f.  Such other and further relief as the court may deem adequate and just.

## COUNT V -   FRAUD

120. Each of the Defendants during sundry times pertinent to this Complaint have made false representations in their statements and/or documents that they had in their possession or their agents to which they controlled the original note and mortgage for the premises of the Plaintiff.    The Predatory Lenders purported to assign their rights in and to said original mortgage and note knowing full well that they had no such mortgage or note originally in their possession or in their possession at the time they were effectuating such assignment and transfers.

121. In that the Predatory Lenders and Servicers initiated foreclosure actions against the Plaintiffs it is apparent that said transferees used the facial validity of the transfers to have the court act thereon.

122. As a result of the fraudulent actions, as aforesaid, Plaintiffs have and will likely to be targeted for further foreclosure actions, and have and continue to be irreparably harmed, injured and damaged. Additionally, the Defendants, jointly and severally have committed a fraud on the Court by presenting documents all the while representing that they had the right and entitlement to foreclose the subject property, whereas in fact they proceeded to trial absent the original Note all the while.

WHEREFORE,    Plaintiffs pray that:

a. A judgment determining that the Defendants, jointly and severally committed fraud on the Plaintiff and fraud upon the Court.

b. An   Order of the Court requiring that they cease and desist therefrom.

c. Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

d. Punitive Damages as and when allowed

e. Costs of Suits

f. Attorneys Fees

g. Such other and further relief as the court may deem adequate and just.

## COUNT   VI – CIVIL THEFT

123.  Each of the Defendants during sundry times pertinent to this Complaint have made false representations in their statements and/or documents that they had in their possession or their agents to which they controlled the original note and mortgage for the premises of the Plaintiff. The Defendants purported to assign their rights in and to said original mortgage and note knowing full well that they had no such mortgage or note originally in their possession or in their possession at the time they were effectuating such assignment and transfers.

124.  In that the Defendants or a portion of the Defendants initiated foreclosure actions against the Plaintiff it is apparent that said transferees used the facial validity of the transfers to have the court act thereon.

125.  As a result of the fraudulent actions, as aforesaid, Plaintiff has and will likely to be targeted for further foreclosure actions, and has and continues to be irreparably harmed,   injured and damaged. Additionally, the Defendants, jointly and severally have committed a fraud on the Court by presenting documents all the while representing that they had the right and entitlement to foreclose the subject property, whereas in fact they proceeded to trial absent the original Note all the while.

126.  The Defendants by their actions aforesaid use the civil court process to commit theft of the Plaintiff's property and are violating Florida Statute 772.11 which prohibits civil theft. Even after notice thereof, they continue in their unconscionable conduct.

WHEREFORE, Plaintiff prays that:

a. A judgment determining that the Defendants, jointly and severally attempted to commit civil theft the Plaintiff as well as a fraud upon the Court.

b. An Order of the Court requiring that they  cease and desist therefrom.

c. Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

d. Treble damages as allowed by Statute

e. Costs of Suit

f. Attorneys Fees

g. Such other and further relief as the court may deem adequate and just.

## COUNT VII -ABUSE OF PROCESS

127. The Defendants have heretofore brought two (2) foreclosure actions against the Plaintiff. In each of these actions, the Defendants knew that they did not have either the legal capacity or standing to maintain the action, and/or did not have the necessary security documentation needed to prosecute the action through trial.

128. The Defendants made an illegal, improper and perverted use of process while at the same time having motives or purposes of exercising illegal, improper and fraudulent conduct.

129. As a result thereof, the Plaintiff has necessarily sustained great harm, damage and injury.

WHEREFORE, Plaintiffs pray that:

a.  A judgment determining that the Defendants, jointly and severally abused process.

b. An  Order of the Court requiring that they  cease and desist therefrom.

c. Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

d. Costs of Suit

e. Attorneys Fees

f. Such other and further relief as the court may deem adequate and just.

## COUNT VIII – CIVIL RICO

130. The combined actions of the Defendants as averred hereinabove at length establishes the existence of an enterprise, and each of the Defendants have participated in committing crimes including perpetuating mail and wire fraud, amongst other federal and state crimes.

131. As a result of the foregoing wrongful acts, there exists a pattern of racketeering activity, including the creation and execution of schemes to foreclose real property with the security or documentation required to satisfy the due process of law, and in the forgery of documents to create the illusion that they are real documents and in using "robo signers" who execute documents as if they were duly authorized and employed by the signing entity when in fact they are hired con artists.

132. Plaintiffs have been made the subject of two foreclosure actions in which the racketeering conduct and methods were utilized, they are distinguished by the similarity of conduct, continuity and characteristics of the undertakings and were not isolated incidents by any means.

133. Plaintiffs have sustained great harm, injury and damage as a result of the Defendants wrongful conduct as aforesaid.

WHEREFORE, Plaintiffs pray that:

    a. A judgment determining that the Defendants, jointly and severally have violated the Federal and State of Florida RICO act

    b. An Order of the Court requiring that they cease and desist therefrom.

    c. Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

    d. Treble damages as allowed by Statute

    e. Costs of Suit

    f. Attorneys Fees

    g. Such other and further relief as the court may deem adequate and just.

## COUNT IX – SLANDER OF TITLE

134. Defendants have during various times pertinent to this Complaint filed lien(s) against the Property in the form of a recorded mortgage.

135. As stated hereinabove the Defendants never made an actual "loan" on the Property, never perfected the loan as required under the Uniform Commercial Code, if there was a Note, have irretrievably lost the Note, has made assignments that were nebulous if not outright fraudulent, have assumed authority over the so called loan for which they had no authority, and otherwise committed sundry fraudulent acts and deeds, all in an effort to deprive the Plaintiff his quiet enjoyment as the fee simple owner of the Property.

136. To date, none of the Defendants have been able to demonstrate that there is a Note outstanding that would require a mortgage or other lien to subject the property thereto.

137. Plaintiffs are entitled to a Declaratory Judgment freeing the title to the Property of any liens or encumbrances derived from the Defendants or their agents, or subsidiary companies.

138. Plaintiffs have and continues to sustain harm,   injury and damage as a result thereof.

WHEREFORE,   Plaintiffs pray that:

    a. A judgment determining that the Defendants, jointly and severally have slandered the title of Plaintiffs property.

    b. An Order of the Court requiring that they   cease and desist therefrom and striking all liens and encumbrances of the Defendants on the Property.

    c. Compensatory Damages such as to properly compensate the Plaintiff under the laws of The United States of America and the State of Florida

    d. Costs of Suit

    e. Attorneys Fees

    f. Such other and further relief as the court may deem adequate and just.

## COUNT X – APPROPRIATION AND UNJUST ENRICHMENT

139.    Defendants have all played in a scheme and device, such as to fleece from the Plaintiffs monies for which they accept no liability as a lender, or trustee or fiduciary, or true servicer. By their actions, they have created a sham loan transition which neither conforms to the requirements thereof of the Uniform Commercial Code, or traditional banking practices, nor is there a perfected Securitization, nor bonified Trustee, nor any acknowledged fiduciary relationship, nor bonified Trust, nor any entity or person now in being that can validate a true loan transaction on their own books and records and not records from third parties who have no privity to any loan transaction.

140. The sham transaction dictates that all monies paid by Plaintiffs to date be returned to Plaintiff Murphy as any payments thereof were not pursuant to a bonifide loan transaction.   The Defendants have appropriated Plaintiffs monies under false color and   through improper manipulation and deceit.

141. The retention of any monies heretofore received by the Defendants have unjustly enriched the Defendants.   There are no true investors of the Loan that can be tied directly to Plaintiffs alleged loan

and there is no bonifide chain or assignments or similar such that any the Defendants can prove that they are entitled to the loan payments through presentation of bonifide loan documents.

142. Equity and justice require that the Defendants be required to disgorge and pay over to the Plaintiffs all monies heretofore paid by the Plaintiffs together with interest.

WHEREFORE, Plaintiffs pray that:

   a. A judgment determining that the Defendants, jointly and severally have appropriated the Plaintiffs money.

   b. An Order of the Court requiring that they disgorge and pay over to the Plaintiffs all appropriate funds.

   c. Costs of Suit

   d. Attorneys Fees

   e. Such other and further relief as the court may deem adequate and just.

## COUNT XI   PROHIBITORY INJUNCTION

143. While economic damages are sought in this complaint, such an award will not provide an adequate remedy at law in as much as the damages to both Plaintiffs involve unique property rights and such damages are continuing and will continue without intervention of a court order commanding the Defendants to cease and desist their activities.

144. Defendants have been given adequate opportunity to cease and desist their illegal and wrongful activities.

145. Although none of the Defendants had any legally enforceable right, title or interest in the subject purported debt, note or mortgage, they have nonetheless directly or indirectly undertaken actions and fabricated statements, correspondence and documents, some of which are recorded in county records (as stated above) that disparage the title to the subject property and interfere with the successful settlement of the affairs of Plaintiff Murphy.

146. Defendants refuse to make corrections or disclosures that are required under Federal Lending Laws, servicing laws, and collection laws as described above.

147. Defendants behavior raises the inference or presumption that they are acting without authority or ultra vires in conflict with the true rights of any party who actually paid for the purported debt.

148.   Defendants behavior raises the inference that none of the Defendants has ever maintained a loan account receivable reflecting their purchase of the underlying purported obligation; and the inference is further raised that none of the Defendants is an authorized agent, servant or employee of any creditor who has ever maintained a loan and recording false documentation were without right, justification or excuse.

149.   Such actions will continue unless barred by an Order of this Court prohibiting them from taking such actions.

  a.   Plaintiffs are suffering continuing injury, emotional distress and financial damages as a result of the Defendants' unlawful behavior and breaches of statutory duty. Such injuries can only be stopped by Order of this court, after which the damages to Plaintiffs may be compiled up to date when corrective action is taken.

150. Financial damages are an inadequate remedy, to wit: Plaintiff Murphy currently resides in their homestead, the largest investment of their lives, and their rights to title, peaceful enjoyment of their unique land rights has been and is continuing to be abrogated.

WHEREFORE Plaintiffs pray that this Honorable Court will enter an order

  a.   declaring the rights and duties and obligations of all parties hereto with respect to the subject purported debt, note and mortgage and all other recorded documentation in which the subject loan agreement is referenced or recited and

  b.   that the court grant such other and further relief as the court might deem just and proper in the circumstances, including but not limited to a final judgment canceling those recorded instruments that are determined by this court to have been false utterances of material facts,

  c.   a final judgment of prohibitive injunction preventing Defendants, each or any of them, from asserting any right, title or interest to any deed, purported debt, note or mortgage and

  d.   that the court further award court costs, attorney fees and expenses related to the preparation and filing and prosecution of this lawsuit as allowed by contract, by law or both,

  e.   plus such other and further relief as this Court may deem just and proper.

## COUNT XII   MANDATORY INJUNCTION

151. While economic damages are sought in this complaint, such an award will not provide an adequate remedy at law inasmuch as the damages to both Plaintiffs are unique and continuing without intervention of a court order commanding the Defendants to cease and desist their activities.

152. Although none of the Defendants had any right, title or interest in the subject purported debt, note or mortgage, they have nonetheless directly or indirectly undertaken actions and fabricated statements, correspondence and documents, some of which are recorded in county records that disparage the title to the subject property and interfere with the successful settlement of the affairs of Plaintiffs Murphy.

153. Further, Plaintiffs Murphy financial and personal reputation continue to be injured and damaged as a direct and proximate result of the Defendants illegal actions.

154. Defendants refuse to make disclosures that are required under Federal Lending Laws, servicing laws, and collection laws as described above and thus their behavior raises the inference or presumption that they are acting without authority or ultra vires in conflict with the true rights of the party who actually paid for the purported debt, if any.

155. The Defendants' actions in pursuing foreclosure and recording false documentation were without right, justification or excuse.

156. In addition to prohibitive injunction alleged in the preceding count, Defendants should be ordered to correct all prior erroneous flings, notices, correspondence and reports concerning the credit and reputation of Plaintiffs Murphy and/or his status as owner of the subject property.

WHEREFORE Plaintiffs pray that this Honorable Court will enter an order

    a.   declaring the rights and duties and obligations of all parties hereto with respect to the subject purported debt, note and mortgage and all other recorded documentation in which the subject loan agreement is referenced or recited and

    b.   further that the court grant such other and further relief as the court might deem just and proper in the circumstances, including but not limited to a final judgment canceling those recorded instruments that are determined by this court to have been false utterances of material facts,

    c.   a final judgment of prohibitive injunction preventing Defendants, each or any of them, from asserting any right, title or interest to any deed, purported debt, note or mortgage,

    d.   a mandatory injunction requiring the Defendants to cancel on record or any registry any recorded interests and negative credit reports and

    e.   that the court further award court costs, attorney fees and expenses related to the preparation and filing and prosecution of this lawsuit as allowed by contract, by law or both,

f.  plus such other and further relief as this Court may deem just and proper.

## COUNT XIII  GROSS NEGLIGENCE

157.  This is an action for damages for gross negligence including damages for emotional distress, and punitive damages thereafter if allowed by the court.

158.  As aforesaid, there was a single transaction in which the only real parties in interest were the Plaintiffs and the investors. The Defendants, each and all of them, were solely intermediaries.

159.  Through the use of misdirection, lies, and misrepresentations, the Defendants, as intermediaries, embarked on a sales scheme in which neither the Plaintiffs nor the investors knew anything about the existence of each other and neither one understood the terms of the transaction into which they were lured.

a.  But for the Plaintiffs' issuance of a note and mortgage, the scheme could not exist.

b.  But for the investors money, the scheme could not exist.

c.  But for the Defendants, as intermediaries, acting as though they were principals - or representing principals - Plaintiffs and the investors could have and would have known of each other, the terms of their respective transactions, and would have been able to settle, resolve any disputes, including reforming or modifying any rights and obligations that existed between them.

d.  But Defendants all interfered with those basic elements of any contract and instead inserted themselves as the ultimate arbiters of the terms and conditions of any relations between the Plaintiffs and the investors.

e.  If the Defendants could be considered principals, it would be solely because they were successful at concealing a business plan in which retaining revenue and profit at the expense to and detriment of both investors and the Plaintiffs herein. Or, in alternative, they were principals because they acted like principals (without the knowledge or consent of either Plaintiffs or investors) and arbiters of any attempt to workout, modify or settle claims.

160.  At all times material hereto, Defendants had a duty of fair dealing and honesty owed to Plaintiffs Murphy and the marketplace in general, including Plaintiffs.

161.  Defendants breached that duty causing continuing damage to the Plaintiffs herein, including loss of marketable title, emotional distress caused by the continuing threat of eviction and the conduct of a fake sale of the property, and consequential damages arising from the apparent legal inability of the Plaintiffs

to sell, convey, hypothecate the subject property in the ordinary management of their financial affairs and investments.

162.   At all times material hereto the Defendants knew, must have known or should have known that their actions were part of a scheme in which the interests of the only real parties in interest were sublimated to the goal of revenue and profit for the Defendants as intermediaries.

163.   At all times a material hereto, the Defendants knew, must have known or should have known that their actions would undermine the interests of the only two real parties in interest.

164.   At all times material hereto the Defendants acted with either intention or reckless disregard for the consequences and detriment to innocent victims.

WHEREFORE Plaintiffs prays this Honorable Court enter Judgment to the Plaintiff Murphy

        a.   for damages caused by the illegal conduct of the Defendants in interfering with the Plaintiffs' various business relations,

        b.   award punitive, and/or exemplary damages

        c.   grant an award of court costs,

        d.   and grant such other and further relief as the court might deem just and proper.

## COUNT XIV   NEGLIGENCE

165.   This is an action for damages for common law negligence including damages for emotional distress, and punitive damages if allowed by the court.

166.   As aforesaid, there was a single transaction in which the only real parties in interest were the Plaintiffs and the investors. The Defendants, each and all of them, were solely intermediaries.

167.   Through the use of misdirection, lies, and misrepresentations, the Defendants, as intermediaries, embarked on a sales scheme in which neither the Plaintiffs nor the investors knew anything about the existence of each other and neither one understood the terms of the transaction into which they were lured.

168.   But for the Plaintiffs' issuance of a note and mortgage, the scheme could not exist.

169.   But for the investors money, the scheme could not exist.

170.   But for the Defendants, as intermediaries, acting as though they were principals --- or representing principals --- Plaintiffs and the investors could have and would have known of each other, the terms of their respective transactions, and would have been able to settle, resolve any disputes, including reforming or modifying any rights and obligations that existed between them.

171. But Defendants all interfered with those basic elements of any contract and instead inserted themselves as the ultimate arbiters of the terms and conditions of any relations between the Plaintiffs and the investors.

172. If the Defendants could be considered principals, it would be solely because they were successful at concealing a business plan in which retaining revenue and profit at the expense to and detriment of both investors and the Plaintiffs herein. Or, in alternative, they were principals because they acted like principals (without the knowledge or consent of either Plaintiffs or investors) and arbiters of any attempt to workout, modify or settle claims.

173. At all times material hereto, Defendants had a duty of fair dealing and honesty owed to Plaintiff Murphy and the marketplace in general, including Plaintiffs.

174. Defendants breached that duty causing continuing damage to the Plaintiffs herein, including loss of marketable title, emotional distress caused by the continuing threat of eviction and the conduct of a fake sale of the property, and consequential damages arising from the apparent legal inability of the Plaintiffs to sell, convey, hypothecate the subject property in the ordinary management of their financial affairs and investments.

175. At all times material hereto the Defendants knew, must have known or should have known that their actions were part of a scheme in which the interests of the only real parties in interest were sublimated to the goal of revenue and profit for the Defendants as intermediaries.

176. At all times a material hereto, the Defendants knew, must have known or should have known that their actions would undermine the interests of the only two real parties in interest.

177. At all times material hereto, the Defendants acted with either intention or reckless disregard for the consequences and detriment to innocent victims.

WHEREFORE Plaintiffs prays this Honorable Court enter Judgment to the Plaintiff Murphy

    a. for damages caused by the illegal conduct of the Defendants in interfering with the Plaintiffs' various business relations,

    b. grant an award of court costs,

    c. grant such other and further relief as the court might deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury.

***Dated: September 20, 2021***

By:   *s/ Henry N. Portner, Esquire*
Henry N. Portner, Esquire
18851 NE 29th Ave, Suite 700
Aventura, FL 33160
portnerlaw@gmail.com
Fl ID # 0883050
(561) 400-0027

## **<u>VERIFICATION</u>**

I, James M. Murphy, declare and verify under penalty of perjury that the foregoing is true and correct.


_____/s/James M. Murphy_____
James M. Murphy


**Date: 9/20/2021**